ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 1 9 2011

JAMES W. HATTEN, Clerk
By: _____ , Clerk
Deputy Clerk

|  |  |
|---|---|
| FAITH ENTERPRISES GROUP, INC., on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AVIS BUDGET GROUP, INC., AVIS BUDGET CAR RENTAL, LLC, AND AVIS RENT A CAR SYSTEM, LLC,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No.:<br>**TWT**<br>**1:11-CV-3166**<br>Complaint-Class Action<br><br>Jury Trial Demanded |

**COMPLAINT**

Plaintiff Faith Enterprises Group, Inc. ("Faith"), individually and on behalf of all others similarly situated, brings this class action against Defendants Avis Budget Group, Inc. ("Avis Budget Group"), Avis Budget Car Rental, LLC ("Avis Budget Car Rental"), and Avis Rent A Car System, LLC ("Avis Rent A Car") (together "Avis"). Plaintiff alleges the following upon personal knowledge as to its own acts and, as to all other allegations, upon information and belief, and investigation by counsel.

## NATURE OF THE CASE

1.     Avis is a leading global vehicle rental chain.  Avis oversees the Avis brand of vehicle rental through the "Avis System."  The Avis System includes approximately 1,300 Avis System locations operated by Avis Rent a Car and its franchisees and independent agency operators ("Agency Operators") throughout the United States.

2.     The Wizard System is the electronic reservation system for booking all vehicles from Avis System locations around the country.  Customers can make reservations on the Wizard System through the Avis website at www.avis.com, through online travel portals, and through many major airlines and other third parties with direct connect technology.  Customers, corporate travel departments and travel agents are provided Wizard System access and data when they contact Avis call centers at 1-888-777-AVIS or access Avis-provided online portals for making reservations.  Thus, when the Wizard System shows a location as being "sold out," this "sold out" status is communicated throughout the country to all entities contacting Avis or accessing Avis data for reservations.

3.     Avis  violates  the  federal  Racketeering  Influenced  Corrupt Organizations Act, as well as its fiduciary and contractual duties to Agency Operators,  by  using  the  Wizard  System  to  routinely  and  systematically

2

misrepresent to customers that Agency Operators are "sold out," even though vehicles are available for those dates at those locations, to divert Agency Operator business to Company-Operated Locations. Often the misrepresentation that an Agency Operator is "sold out" is accompanied by an Avis suggestion that the customer rent vehicles from a company-operated airport location. As a result of these misrepresentations, Faith and other Agency Operators lose significant vehicle rental commissions.

4.      Avis Rent A Car also breaches its fiduciary and contractual duties by routinely and systematically failing to provide sufficient vehicles to Agency Operators.

5.      Avis Rent A Car also is unjustly enriched by its practice of imposing the requirement on Agency Operators that they honor - without compensation - Avis coupons for free vehicle rentals.

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Faith is a Georgia corporation and Agency Operator located at 305 Pharr Road, Atlanta, GA 30305. Faith currently operates through an Agency Operator contract with Avis Rent A Car executed in December 2005. Faith is owned by Nathan Copeland and Amanda Copeland. Nathan Copeland is Faith's President and Chief Executive Officer.

3

7.     Defendant Avis Budget Group is a Delaware corporation with its principal place of business in Parsippany, New Jersey.  Avis Budget Group controls Avis Budget Car Rental, Avis Rent A Car and the Avis System; owns the Wizard System; and owns much of the fleet of vehicles rented in the Avis System. Avis Budget Group may be served through its registered agent, Corporation Service Company, 830 Bear Tavern Rd, West Trenton, New Jersey 08628.

8.     Defendant Avis Budget Car Rental is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey.  Avis Budget Car Rental is a wholly owned subsidiary of Avis Budget Group.  Avis Budget Car Rental owns Avis Rent A Car and Budget Rent A Car.  Avis Budget Car Rental was formerly known as Cendant Car Rental, LLC, and may be served through its registered agent, Corporation Service Company, 40 Technology Pkwy. South, #300, Norcross, Georgia 30092.

9.     Defendant Avis Rent A Car is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey.  Avis Rent A Car is a wholly owned subsidiary of Avis Budget Car Rental, oversees the day-to-day operations of the Avis System, and contracts directly with the Agency Operators. Avis Rent A Car was formerly known as Avis Rent A Car System, Inc., and may

4

be served through its registered agent Corporation Service Company, 40 Technology Pkwy. South, #300, Norcross, Georgia 30092.

10.     Avis Budget Group, Avis Budget Car Rental, and Avis Rent A Car are subject to the personal jurisdiction of this Court.

11.     This Court has subject matter jurisdiction over this case pursuant to 18 U.S.C. § 1964(c) over the federal Racketeering Influenced Corrupt Organizations Act ("RICO") claim.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district under 28 U.S.C. § 1391: Avis Budget Group, Avis Budget Car Rental, and Avis Rent A Car operate and do business in the Northern District of Georgia, and a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of Georgia.  Venue is also proper under 18 U.S.C. § 1965: Avis Budget Group, Avis Budget Car Rental, and Avis Rent A Car operate and do business in the Northern District of Georgia, are found in the Northern District of Georgia, have a registered agent in the Northern District of Georgia (in the case of Avis Budget Rental Car and Avis Rent A Car), and transact business in the Northern District of Georgia.

## FACTS

### I.   The Avis System.

13.   The Avis System uses three types of vehicle rental locations in the United States: (1) approximately 300 company-owned-and-operated locations ("Company-Operated Locations"); (2) approximately 600 company-owned and third-party-operated locations ("Agency Operator Locations"); and (3) approximately 300 franchisee/licensee locations ("Franchise Locations"). Approximately 95% of the Avis System total United States revenue is generated by the 950 Company-Operated Locations and Agency Operator Locations, and the remainder is generated by Franchisee Locations.

### A.   Company-Operated Locations.

14.   Approximately 225 of the 300 domestic Company-Operated Locations are at airports, with most of the balance located in downtown or other centralized business districts that have a high concentration of businesses in need of rental vehicles.

15.   Avis Rent A Car often charges rental rates of up to 80% higher at company-operated airport locations compared to off-airport locations.

### B.   Agency Operator Locations.

16.   Agency Operator Locations are owned by Avis Rent A Car and operated by Agency Operators on behalf of Avis.  Agency Operators operate Avis

6

Rent A Car locations pursuant to contracts ("Agency Operator Agreements") with Avis Rent A Car. There is an agency and fiduciary relationship between each Agency Operator and Avis Rent A Car. Each Agency Operator has an assigned location code in the Avis System. For example, the Faith location code is B5K.

17.    Avis Rent A Car pays Agency Operators commissions based on revenues derived by the Agency Operator from the rental of Avis System vehicles owned by Avis Rent A Car and Avis licensees (together "Avis System Members"). Agency Operators also are paid commissions based on services related to the vehicle rentals, such as fuel and insurance.

18.    The Agency Operator Agreements require that the Agency Operator "shall not rent, nor offer for rent, any cars other than Avis System Members' vehicles on a transient rental basis during the term of this Contract." Agency Operator Agreements impose the following obligations and rights on Agency Operators, which make Agency Operators an agent of Avis:

- Bind Avis Rent A Car to rental agreements and insurance contracts;

- Use the Agency Operator Location solely for the purpose of renting vehicles on behalf of Avis Rent A Car;

- Collect and hold all money received from vehicle rentals in trust for Avis Rent A Car;

7

- Report to Avis Rent A Car all damages and accidents involving Avis System Member vehicles, and all vehicles that are overdue, missing, or stolen;

- Park, safe keep, wash, clean, fuel, and locally shuttle rental vehicles of Avis System Members;

- Maintain and make minor repairs to Avis System Members' vehicles;

- Pay the costs of office supplies and expenses; and

- Use Avis trade names, trademarks, and service marks consistent with Avis guidelines.

19.    Avis Rent A Car's obligations under the Agency Operator Agreements include the duties to:

- Provide access to the Avis System, including the Wizard System;

- Furnish the Agency Operator with vehicles to be rented that are sufficient in quantity and class;

- Bear the costs related to the operation of the rental vehicles and the costs incurred in making repairs to such vehicles;

- Provide insurance protection to renters according to the terms and conditions of the Avis System rental agreement;

8

- Provide the Agency Operator with a rental facility equipped with office furniture, a telephone system, fax machine/copier, and Wizard System computer terminal and printer, from which the Agency Operator is required to conduct business;

- Provide the Agency Operator with written guidelines and other documents containing Avis Rent A Car's policies, procedures, and standards for renting vehicles; and

- Provide training to the Agency Operator and its employees.

20.    Avis Rent A Car knows that its complete control over the Wizard System and vehicle availability makes the Agency Operators dependent on Avis Rent A Car for their success, and promises to "support [their] success in every way":

- "At   Avis,   the   Sky's   the   Limit!"   http://www.avis.com/car-rental/html/employment/boss.html?MID=avis.com_selfemployment/boss.html

- At Avis, "[t]here's . . . no limit to how much revenue you could generate!" *Id.*

- "As you build your business, Avis will support your success in every way . . ." *Id.*

9

- "Avis will provide the rental cars and will evaluate the consumer demand in your market to determine the size of the fleet." *Id.*

- Agency Operators "have unlimited potential for growth." http://www.avis.com/car-rental/html/employment/aarp.html

### C.    The Wizard Reservation System.

21.    The Wizard System is Avis's worldwide reservation, rental, data processing, and information management system.  The Wizard System purports to provide Avis's customers with vehicle rental availability and pricing through the Avis call centers, www.avis.com, online travel portals such as www.orbitz.com, travel agents, and many other entities.  The Wizard System is controlled entirely by Avis.

### D.    Marketing Contracts.

22.    Over 80% of domestic vehicle rental transactions from Avis locations in the United States are generated by travelers who rented from Avis under contracts between Avis and the travelers' employers or through membership in an organization with whom Avis has a contractual affiliation (such as AARP or Costco).  In entering such contracts, Avis represents that the customer can rent vehicles at any of the more than 1,000 Avis System locations around the country.

10

23.     Avis also has marketing relationships with organizations such as American Express Company, MasterCard International Incorporated, and Sears Holding Corp., through which Avis provides customers of these entities with incentives to rent vehicles from Avis.  Avis conducts various loyalty programs through direct marketing campaigns, including Avis Preferred, which allows customers to bypass the rental counter when renting a vehicle, and Avis First, which offers customers enhanced benefits for frequent rentals.

24.     The high percentage of rentals through Avis marketing contracts means that customers who seek to rent a vehicle at a convenient Agency Operator Location will choose to rent the vehicle from a company-operated airport location if that is the only location with available vehicles.

### E.     Avis Rent A Car Systematically Steers Customers To Company-Operated Locations As A Matter Of Policy And Practice.

25.     Avis Rent A Car uses the Wizard System to provide false information to customers to steer Agency Operator business from Faith and other Class members to Avis Rent A Car's company-operated airport locations.  Despite the Agency Operator Agreements, the purpose of which are to allow Agency Operators to rent Avis System vehicles, Avis Rent A Car systematically "shuts down" Faith and other Agency Operators by misrepresenting on the Wizard

System that the Agency Operators are "sold out" of vehicles. Agency Operators are injured by these misrepresentations in the form of lost commissions, and Avis's customers are injured by the misrepresentations often by being required to rent Avis vehicles at more expensive and less convenient Company-Operated Locations.

26.    Avis employees refer to an Agency Operator being listed as "sold out" and unavailable for reservations on the Wizard System as being "shut down," apparently because it is equivalent to placing a "closed for business" sign on an Agency Operator Location.

27.    Avis Off-Airport Agency Manager (now titled Territory Performance Manager) Sherry Edwards acknowledged by email dated February 11, 2009 to Faith, that Avis shuts down Agency Operators based on factors other than vehicle availability or being "sold out." As a carrot for Agency Operators to sell the expensive vehicle insurance to renters, Ms. Edwards promised that for those Agency Operators that increased their sales of insurance coverage (the amount of Avis-provided liability insurance) to renters, the Agency Operator would not be listed as "sold out" on the Wizard System in March, 2009. Ms. Edwards also promised that if Agency Operators increased their "upsell" in February, Avis would allocate five extra vehicles for the month of March. Avis has thus admitted

that Avis Rent A Car does not allocate vehicles and shutdowns based on a reasonable determination of sufficiency for an operator location as required by the Agency Operator Agreements, or based on vehicle availability, customer demand, or the legitimate needs of the Agency Operators.

28.     On July 7, 2010, Nathan Copeland of Faith met with Avis Territory Performance Manager Brad Kjar.  Mr. Copeland complained about the reservation shutdowns.  Mr. Kjar told Mr. Copeland that the Faith location should not be shut down on the Wizard System, and that Mr. Kjar had met with Avis Off-Airport District Manager Rick Seelye and others about keeping open the Faith location.  In a meeting on July 20, 2010, Mr. Kjar confirmed to Mr. Copeland that Mr. Seelye and others repeatedly had shut down and caused Faith and other Agency Operators to be listed as "sold out" when the Agency Operators had vehicles available for rent.  In a later meeting on January 19, 2011, Mr. Seelye and Peter Piracci, Avis Off-Airport Development Manager, confirmed to Mr. Copeland that Avis Rent A Car could substantially increase Mr. Copeland's revenue simply by stopping the practice of Wizard System shutdowns.  Mr. Seelye and Mr. Piracci did not deny that shutdowns substantially decrease Agency Operator revenues.

29.     The Wizard System available to the public showed that Faith was "sold out" of vehicles, even though Avis Rent A Car internal records showed that

13

vehicles were available for rental at Faith on numerous dates, including for example the following: March 21, 2007; January 20, 2009; July 8, 2009; August 17, 2009; August 19, 2009; November 5, 2009; August 26, 2010; September 21, 2010; September 22, 2010; September 28, 2010; October 21, 2010; November 17, 2010; February 23, 2011; and August 29, 2011.

30. Over the last six years, Avis Rent a Car has routinely misrepresented to customers that low-cost and convenient Agency Operators around the country are "sold out" for the dates entered by the customer even though vehicles are available at those Agency Operator Locations. The following sixteen paragraphs are not intended as a comprehensive listing of these misrepresentations for the Class period. The same conduct has occurred throughout the United States during the Class period.

### 1.    Atlanta, Georgia

31. On February 23, 2011, the Wizard System available to the public showed that Faith and fifteen other Agency Operators in the Atlanta area, with location codes B5K, CD9, HM0, NWA, MW2, G4A, M5G, PW8, PC5, FY8, KN4, DL1, R9A, CO3, K1N, W2S, were "sold out" and would not accept reservations for one-day and two-day rentals starting on February 24, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those

14

locations for those dates. The Wizard System showed that the company-operated Atlanta airport location was not "sold out" and was taking reservations for those days.

32.   On August 29, 2011, the Wizard System available to the public showed that Faith and sixteen other Agency Operators in the Atlanta area, with location codes B5K, R9A, HM0, CD9, D1V, DL1, G4A, KN4, NWA, M5G, PW8, N1C, PC5, RW7, S8T, SM3, and W2S, were "sold out" and would not accept reservations for three-day rentals starting on September 1, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Atlanta airport location was not "sold out" and was taking reservations for those days.

### 2.   Chicago, Illinois

33.   On March 9, 2011, the Wizard System available to the public showed that nine Agency Operators in the Chicago area, with location codes OA0, OH1, DAO, NPV, WZ3, SK2, H9I, EG1, and C5L, were "sold out" and would not accept reservations for one-day and two-day rentals starting on March 10, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the

company-operated Chicago airport location was not "sold out" and was taking reservations for those days.

34.    On August 15, 2011, the Wizard System available to the public showed that sixteen Agency Operators in the Chicago area, with location codes WZ3, K5P, SK2, K5L, QK4, OA0, H9I, DAO, EG1, LL7, D1G, Q2Q, OH1, NPV, C5L, and HP1, were "sold out" and would not accept reservations for three-day rentals starting on August 16, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Chicago airport location was not "sold out" and was taking reservations for those days.

### 3.    Denver, Colorado

35.    On March 16, 2011, the Wizard System available to the public showed that six Agency Operators in the Denver area, with location codes DN2, DN6, LW5, E1C, HR7, and WVC, were "sold out" and would not accept reservations for one-day and two-day rentals starting on March 17, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Denver airport location was not "sold out" and was taking reservations for those days.

16

36.     On August 11, 2011, the Wizard System available to the public showed that seven Agency Operators in the Denver area, with location codes DN2, DN6, LW5, E1C, HR7, BF1, and WVC, were "sold out" and would not accept reservations for one-day rentals starting on August 12, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates.  The Wizard System showed that the company-operated Denver airport location was not "sold out" and was taking reservations for those days.

### 4.     Las Vegas, Nevada

37.     On March 18, 2011, the Wizard System available to the public showed that nine Agency Operators in the Las Vegas area, with location codes FQ4, L6Z, L6V, V09, VN4, L4S, L1G, SV6, and MG8, were "sold out" for two-day and three-day rentals starting on March 19, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates.  The Wizard System showed that the company-operated Las Vegas airport location was not "sold out" and was taking reservations for those days.

38.     On August 15, 2011, the Wizard System available to the public showed that twenty-one Agency Operators in the Las Vegas area, with location

codes FQ4, Q2V, L6V, V09, VN4, L4S, QN7, L1G, QN5, QM9, Q1L, QN4, QX2, QL3, V2M, L0V, N2R, HN2, SV6, MG8 and HN7, were "sold out" for three-day rentals starting on August 16, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Las Vegas airport location was not "sold out" and was taking reservations for those days.

### 5.    Miami, Florida

39.    On February 23, 2011, the Wizard System available to the public showed that nine Agency Operators in the Miami area, with location codes G0M, FM1, KE0, OP2, F9M, H96, N9M, P0F, and F3L, were "sold out" for one-day and two-day rentals starting on February 24, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Miami and Fort Lauderdale airport locations were not "sold out" and were taking reservations for those days.

40.    On August 11, 2011, the Wizard System available to the public showed that twelve Agency Operators in the Miami area, with location codes G0M, M6I, MB2, FM1, KE0, HI9, OP2, F9M, H96, N9M, P0F, and F3L, were "sold out" for one-day rentals starting on August 12, 2011, even though Avis Rent

18

A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Miami and Fort Lauderdale airport locations were not "sold out" and were taking reservations for those days.

### 6.    Pittsburgh, Pennsylvania

41.    On March 9, 2011, the Wizard System available to the public showed that eight Agency Operators in the Pittsburgh area, with location codes PT1, PBP, PT7, PX9, P1P, NH1, C2B, and IW2, were "sold out" for one-day and three-day rentals starting on March 10, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Pittsburgh airport location was not "sold out" and was taking reservations for those days.

42.    On August 18, 2011, the Wizard System available to the public showed that ten Agency Operators in the Pittsburgh area, with location codes WD2, PT7, PX9, PIP, NHI, C2B, BL2, and IW2, were "sold out" for one-day rentals starting on August 19, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations for those dates. The Wizard System showed that the company-operated Pittsburgh airport location was not "sold out" and was taking reservations for those days.

### 7. San Diego, California

43. On February 23, 2011, the Wizard System available to the public showed that four Agency Operators in the San Diego area, with location codes KS3, V1X, SDD, and SN2, were "sold out" for one-day rentals starting on February 24, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations on that date. The Wizard System showed that the company-operated San Diego airport location was not "sold out" and was taking reservations for those days.

### 8. Charlotte, NC

44. On March 9 and 10, 2011, the Wizard System available to the public showed that five Agency Operators in the Charlotte area, with location codes CL3, CQ7, PV8, C9N, and C6C, were "sold out" and would not accept reservations or provide rental pricing for one-day rentals beginning March 10, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations on that date. The Wizard System showed that the company-operated Charlotte airport location was not "sold out" and was taking reservations for those days.

### 9.   Dallas, TX

45.   On February 23, 2011, the Wizard System available to the public showed that fifteen Agency Operators in the Dallas area, with location codes VV0, D5L, GD4, DV4, R5H, FC6, AR8, LE3, GP7, C0H, NDT, RN5, IV8, L8C and MQ7, were "sold out" for one-day rentals starting on February 24, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations on that date.   The Wizard System showed that the company-operated Dallas airport location was not "sold out" and was taking reservations for those days.

### 10.   Phoenix, AZ

46.   On March 17, 2011, the Wizard System available to the public showed that twelve Agency Operators in the Phoenix area, with location codes T4P, SCO, PX6, S4A, M1Z, P1R, P2A, C5A, GD2, SZ8, G5Y, and GI3 were "sold out" for three-day rentals starting on March 18, 2011, even though Avis Rent A Car internal records showed that vehicles were available for rental at those locations on those dates.   The Wizard System showed that the company-operated Phoenix airport location was not "sold out" and was taking reservations for those days.

**F.    Avis Breached Its Duty To Supply Sufficient Vehicles For Rental.**

47.    Avis also systematically breached its duty to supply Faith and Class members with sufficient quantities of vehicles for rental.  On many occasions, Agency Operators were denied vehicles to rent even though the Avis System had excess vehicles available, as illustrated by the following examples.

48.    Avis failed to supply Faith with sufficient vehicles to rent during the period April 7-9, 2011, even though the Avis System in the metro-Atlanta area (from which vehicles were supplied to Faith) had over 650 excess vehicles on April 7; over 1,000 excess vehicles on April 8; and over 1,200 excess vehicles on April 9, 2011.  Faith was listed as "sold out" on the Wizard System for April 7-9, 2011.

49.    Avis failed to supply Agency Operators in the Chicago area, with location codes OA0 and OH1, with sufficient vehicles to rent on February 25, 2011, even though the Avis System in the metro-Chicago area (from which vehicles were supplied to the Agency Operators) had over 1,800 excess vehicles on that day.  Both Agency Operators were listed as "sold out" on the Wizard System for February 25, 2011.

50.    Avis failed to supply the Agency Operator in the Miami area, with location code C1R, with sufficient vehicles to rent on February 25, 2011, even

22

though the Avis System in the metro-Miami area (from which vehicles were supplied to the Agency Operator) had over 160 excess vehicles on that day. The Agency Operator was listed as "sold out" on the Wizard System for February 25, 2011.

51.    Avis failed to supply the Agency Operator in the Pittsburgh area, with location code PT1, with sufficient vehicles to rent on August 19, 2011, even though the Avis System in the metro-Pittsburgh area (from which vehicles were supplied to the Agency Operator) had over 260 excess vehicles on that day. The Agency Operator was listed as "sold out" on the Wizard System for August 19, 2011.

**G.    Avis Rent A Car Requires Agency Operators To Honor Free Service Coupons Without Providing Any Compensation.**

52.    Avis Rent A Car during the previous six years required Agency Operators to honor free company-issued rental service coupons without providing any compensation to the Agency Operator.   Faith objected to the requirement that it honor free rental coupons without compensation.  On November 10, 2010, Faith objected to the requirement that it honor a free rental coupon without compensation to Faith, and was directed by Avis Regional Manager Bobby Latham to honor the coupon and provide a free vehicle for rental pursuant to the coupon. Agency Operators are not allowed to issue rental service coupons.  The Agency

23

Operators are harmed by the requirement that they honor these coupons, because it requires them to perform services without benefit or compensation and to rent scarce vehicles without compensation. For example on April 26, 2011, Faith was required to honor four coupons - each providing a one-day free rental. These coupons were issued by Avis to Elekta Holdings and included Coupon No. TUMA015. Faith was required to expend resources and allocate four vehicles but received no compensation for the free rental period.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action on behalf of persons who are or have been Agency Operators under contract with Avis Rent A Car and its predecessors at any time from September 19, 2005, to the present (the "Class"). The "Class Period" is from September 19, 2005, to the present.

54.     The Class is so numerous that joinder of all Class members is impracticable. Plaintiff believes that the Class contains more than 500 members and that the actual number of Class members can be ascertained through discovery.

55.     There are numerous questions of law and fact common to the Class, and their resolution will be material to the legal claims asserted. These questions include, but are not limited to:

(a)     Did Avis misrepresent, omit, or conceal material facts to consumers about vehicles available for rent at Agency Operator Locations during the Class Period?

(b)     Were any misrepresentations or omissions by Avis reasonably calculated to deceive persons of ordinary prudence?

(c)     Was it reasonably foreseeable that misrepresentations by Avis in the Wizard System would be sent over interstate wires?

(d)     Were any misrepresentations in the Wizard System sent across interstate wires for purposes of executing schemes to defraud?

(e)     Did Avis intentionally participate in schemes to defraud and use interstate wires in furtherance of the scheme in violation of 18 U.S.C. § 1343?

(f)     Is Avis part of an "enterprise" under the federal RICO statute?

(g)     Has Avis engaged in a pattern of racketeering activity under the federal RICO statute?

(h)     Did Avis Rent A Car breach its fiduciary duties to Agency Operators by misrepresenting, omitting, or concealing material facts to customers regarding the availability of vehicles for rent at Agency Operator Locations, and failing to provide Agency Operators with vehicles sufficient in quantity and class?

25

(i)     Did Avis Rent A Car breach the implied duty of good faith and fair dealing by failing to provide Agency Operators with vehicles sufficient in quantity and class?

(j)     Was Avis Rent A Car unjustly enriched at the expense of Agency Operators by requiring Agency Operators to honor coupons and provide rental vehicles pursuant to coupons without compensation?

56.    The questions of law and fact common to all Class members predominate over any questions that may affect only individual Class members.

57.    A class action is a superior method of adjudicating the Class members' claims because individual actions would unnecessarily burden the Court and create the risk of inconsistent results.

58.    The claims of Plaintiff are typical of the claims of the Class members. Plaintiff and all putative Class members are or were Agency Operators operating under the same or substantially similar contracts and have lost commissions by reason of the system-wide scheme by Avis Rent A Car to defraud and make misrepresentations to customers of the Avis System, fail to supply sufficient vehicles to Agency Operators, and to require Agency Operators to honor coupons without compensation.  Plaintiff has no interests that are antagonistic or adverse to the other Class members.

59.     Plaintiff will fairly and adequately protect the interests of the Class.

60.     Plaintiff is an adequate representative of the Class.   Plaintiff has retained counsel that are experienced in class action litigation, complex litigation, and RICO litigation.   Plaintiff and its counsel have engaged in a lengthy factual and legal investigation to develop this case.   Accordingly, Plaintiff will fairly and adequately protect and represent the interests of the Class.

61.     Plaintiff seeks certification of a class, alternatively, under Fed. R. Civ. P. 23(b)(2) or 23(b)(3), or a combination thereof.

62.     Avis's misrepresentations in the Wizard System have the effect of diverting business from Agency Operators and depriving them of commissions to the detriment of Plaintiff and all Class members.   Accordingly, declaratory and injunctive relief that prevents Avis from continuing to misrepresent facts in its reservation system is appropriate on a Class-wide basis.

63.     Given the significant expense required to prosecute the foregoing claims against Avis, the costs of individual actions may well approach or exceed the amount recovered in any individual action.   The expense of pursuing individual actions would require many individual Class members to forego their individual claims against Avis if they are not permitted to pursue those claims as a class.

27

64. This action is manageable because the evidence proving that Avis is engaging in the alleged conduct is common to the Class. Furthermore, the identities of the Class members are known to Avis.

## COUNT I

### (Violation of 18 U.S.C. § 1962(c) Against Avis Rent A Car, Avis Budget Group, and Avis Budget Car Rental)

65. The foregoing allegations are incorporated by reference as if fully set forth herein.

**A. The Enterprise.**

66. The Avis System constitutes an association-in-fact enterprise under 18 U.S.C. § 1961(4).

67. Avis has engaged in an open and ongoing pattern of violations of 18 U.S.C. § 1343 during at least the last six years through its participation in the Avis System. The public makes reservations for vehicles for rent from the Avis System, including locations operated by Avis Rent A Car and Agency Operators, through the Wizard System, which is available at reservation centers by phone at 1-800-331-1212 and 1-888-777-AVIS; via internet at www.avis.com; through online travel portals; through selected partners, including many major airlines utilizing direct connect technology; through travel agents; travel industry partners (such as

airlines or Orbitz); and corporate travel departments. Avis has used the Wizard reservation system to misrepresent the availability of vehicles for rent to the public to divert business within the Avis System from locations operated by the Agency Operators in the Avis System to locations operated by Avis.

68.    Avis participates in the operation and management of the affairs of the enterprise, which exists for Avis's benefit.

69.    The enterprise affects interstate commerce in a variety of ways, including that Avis customers access the Wizard System through interstate wires.

70.    The enterprise also affects interstate commerce in that Avis System customers travel in international and interstate commerce in order to rent vehicles from Avis System locations in this district and elsewhere.

71.    The enterprise also affects interstate commerce in that Avis System customers make payment for rentals of vehicles in the Avis System in this district and elsewhere through interstate wires to Avis.

72.    The enterprise also affects interstate commerce in that it diverts income to Avis from Agency Operators in the Avis System throughout the United States.

73.    Avis accepted and retained the benefits of the acts of racketeering activity, thereby ratifying the conduct of its managers, employees, and the

members of the enterprise who assisted it in committing those acts of racketeering activity.

**B.     Pattern of Racketeering Activity.**

74.     Avis is engaged in an ongoing pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

75.     The federal RICO pattern of racketeering activity engaged by Avis consists of more than two acts of racketeering activity, the most recent of which occurred within ten years after the commission of the prior act of racketeering activity.

76.     Specifically, Avis has violated and continues to violate 18 U.S.C. § 1343, which makes it a federal crime to intentionally participate in a scheme to defraud and use interstate wires in furtherance of the scheme.  For more than six years, Avis has intentionally made material misrepresentations regarding the availability of vehicles for rent at Avis System locations operated by Agency Operators that were reasonably calculated to deceive persons of ordinary prudence. The interstate wires were knowingly used in furtherance of those schemes.  Such use was reasonably foreseeable.

77.     Each violation of 18 U.S.C. § 1343 constitutes an act of racketeering activity under 18 U.S.C. § 1961(1).

78.    The acts of racketeering activity committed by Avis have the same or similar methods of commission. They involve misrepresentations in the Wizard System regarding the availability of vehicles for rent in the Avis System at locations operated by Agency Operators.

79.    The acts of racketeering activity committed by Avis have the same or similar objective: reduce commissions paid by Avis to its Agency Operators and increase Avis's profits.

80.    The acts of racketeering activity committed by Avis have the same or similar victims, including Plaintiff and other Class members.  They also increase the rental costs borne by Avis System customers who are steered to higher priced Company-Operated Locations.

81.    The acts of racketeering activity committed by Avis are otherwise related by distinguishing characteristics including, but not limited to, the involvement of Avis Budget Group, Avis Budget Car Rental, and Avis Rent A Car.

82.    Avis's acts of racketeering activity involve a distinct threat of long-term racketeering activity.

83.    Avis's practice of knowingly and intentionally misrepresenting the availability of vehicles for rent at Agency Operator Locations in the Avis System through the Wizard System has continued for at least six years, is ongoing at the

31

present time, and will continue into the future unless halted by judicial intervention.

84.     Avis's material misrepresentations regarding the availability of vehicles for rent at Agency Operators in the Avis System is part of its regular way of conducting business.

85.     Avis's violations of law have caused Faith and all other Class members to lose commissions on sales that would have been made at their locations in the absence of misrepresenting availability of vehicles at their locations.

86.     Faith and the Class members have suffered an injury to their "business or property," *i.e.*, lost commissions, as a direct result of Avis's violations of the federal RICO statute.

87.     Avis's unlawful conduct has allowed Avis to earn or retain significant funds to which it is not entitled, harmed Agency Operators in the form of lost commissions, and harmed Avis customers by requiring them to rent Avis System vehicles at more expensive and less convenient airport locations.  Specifically, Avis has avoided payment of commissions for rentals to Agency Operators by diverting customers - by fraud, deceit, and misrepresentation - to locations

operated by Avis. These savings contribute to Avis's profits and provide the financial motive for Avis's manipulation of the Wizard System.

## COUNT II

### (Breach of Fiduciary Duties Against Avis Rent A Car)

88.     The foregoing allegations are incorporated by reference as if fully set forth herein.

89.     During the relevant period, Avis Rent A Car has had a fiduciary relationship and a relationship of trust with Plaintiff and Class members.

90.     The Agency Operator Agreements require that Plaintiff and Class members utilize the Avis System, including the Wizard System, in the operation of their business. The Wizard System, vehicle supply and rental rates are controlled by Avis, and accordingly, Avis Rent A Car exercises significant control over the ability of Plaintiff and Class members to conduct business.

91.     Avis Rent A Car and Plaintiff and Class members also have a relationship of trust, partnership, and agency based on the duties set out in paragraphs sixteen through twenty above.

92.     Avis Rent A Car breached its fiduciary duties by (a) misrepresenting to customers on the Wizard System that Plaintiff and Class members were "sold

out" of vehicles when Plaintiff and Class members in fact were not "sold out" of vehicles; and (b) failing to provide sufficient vehicles for rental.

93.    This conduct caused financial injury to Plaintiff and Class members in the form of lost commissions.

## COUNT III

### (Breach of Implied Covenant of Good Faith and

### Fair Dealing Against Avis Rent A Car)

94.    The foregoing allegations are incorporated by reference as if fully set forth herein.

95.    Avis Rent A Car has entered a contract with Plaintiff and each Class member.

96.    The Agency Operator Agreements have adequate consideration.

97.    Plaintiff performed its obligations in all respects under the Agency Operator Agreement.

98.    The Agency Operator Agreements require that the Agency Operator "shall not rent, nor offer for rent, any cars other than Avis System Members' vehicles on a transient rental basis during the term of this Contract."

99.    The Agency Operator Agreements require that "[Avis Rent A Car] shall furnish [the Agency Operator] with the vehicles to be rented on [Avis Rent A

34

Car's] behalf or on behalf of another Avis System member, which [Avis Rent A Car], in its sole discretion deems to be sufficient in quantity and class, from [the Agency Operator's] location . . . ."

100. Avis Rent A Car has a duty to act in good faith and fair dealing in performing the terms of the contract, including the exercise of its discretion to furnish vehicles "sufficient in quantity and class" to be rented at the Agency Operator locations under the terms of the contract.

101. Avis Rent A Car has not acted in good faith in exercising its discretion to furnish vehicles "sufficient in quantity and class" to Plaintiff and each Class member. Avis Rent A Car has implemented a system-wide policy to intentionally withhold vehicles from Plaintiff and each Class member for reasons that are not related to supply and demand of vehicle for rental at Avis System locations. Such conduct is contrary to the agreed purpose of the Agency Operator contract to allow the Agency Operator to rent Avis System vehicles "sufficient in quantity and class" on a commission basis and is committed for the purpose of giving Avis Rent A Car an economic advantage to the detriment of the Agency Operators. Such conduct constitutes unreasonableness and failure to act in good faith.

102. As result of this conduct, Avis Rent A Car has done substantial economic harm to Plaintiff and each Class member. Agency Operators do not have sufficient vehicles to service customer demand and lose significant commissions as a result.

103. The breaches of the implied covenant and duty of good faith and fair dealing have caused foreseeable financial injury to Plaintiff and the Class in the form of lost commissions.

## COUNT IV

### (Unjust Enrichment Against Avis Rent A Car)

104. The foregoing allegations are incorporated by reference as if fully set forth herein.

105. Avis Rent A Car requires Agency Operators to honor free company-issued rental service coupons without providing any compensation to the Agency Operator, and without adequate legal basis.

106. Avis Rent A Car knowingly receives a benefit from the Agency Operators providing the free services for vehicle rentals pursuant to company-issued rental service coupons.

107. Plaintiff and Class members are harmed by the requirement that Agency Operators honor the coupons without compensation.

108.   The circumstances make it unjust for Avis Rent A Car to retain this benefit without reasonable payment to Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.   For an order certifying this action as a class action on behalf of the Class described above;

B.   For restitution and/or disgorgement of all amounts wrongfully obtained;

C.   For damages according to proof;

D.   For an award of treble damages where permitted under applicable law;

E.   For an award of attorneys fees and expenses;

F.   For costs of suit herein incurred;

G.   For both pre- and post-judgment interest on any amounts awarded; and

H.   For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

37

**MILBERG LLP**
Paul F. Novak
Pending Admission *Pro Hac Vice*
Michigan Bar No. P39524
One Kennedy Square
777 Woodward Avenue
Suite 890
Detroit, MI 48826
Tel.:  313-309-1760
Fax:  313-447-2038

Andrei Rado
Pending Admission *Pro Hac Vice*
New York Bar No.
Anna C. Dover
Pending Admission *Pro Hac Vice*
New York Bar No.
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119
Tel.:  212-594-5300
Fax:  212-868-1229

**COOK, HALL & LAMPROS, LLP**

Christopher B. Hall
Georgia Bar No. 318380
Edward S. Cook
Georgia Bar No. 183741
P. Andrew Lampros
Georgia Bar No. *432328*
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.:  404 876-8100
Fax:   404 876-3477

**JEFFREY L. BERHOLD, PC**

Jeffrey L. Berhold
Georgia Bar No. 054682
1230 Peachtree Street
Suite 1050
Atlanta, GA 30309
Tel.: 404-872-3800
Fax: 678-868-2021

This document was created in size 14 Times New Roman font.