IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FAITH ENTERPRISES GROUP, INC.
on behalf of Itself and All Others
Similarly Situated,

   Plaintiff,

     v.

AVIS BUDGET GROUP, INC., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-3166-TWT

ORDER

This is a RICO action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 10] and the Defendants' Motion to Dismiss the Amended Complaint [Doc. 24]. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss the Amended Complaint [Doc. 24]. The Court DENIES as moot the Defendants' Motion to Dismiss [Doc. 10].

I. Background

Avis Budget Group, Inc. ("Avis Group"), Avis Budget Car Rental, LLC ("Avis Rental"), and Avis Rent A Car System, LLC ("Avis Rent A Car") (collectively, "Avis") operate a vehicle rental service. Avis Rental is a wholly-owned subsidiary of Avis Group. Avis Rent A Car is a wholly-owned subsidiary of Avis Rental. Avis'

rental car business includes three types of locations: company-owned-and-operated locations, third-party-operated locations, and franchisee/licensee locations. The third-party-operated locations are managed pursuant to independent operator agreements. Avis, its independent third-party operators, franchisees, and licensees make up the Avis System. (See Compl. ¶ 1.) Avis uses an electronic reservation system, known as the Wizard System, that allows customers to reserve vehicles online. Using the Wizard System, customers can reserve vehicles at any Avis System location.

Faith Enterprises Group, Inc. ("Faith") is one of several hundred third-party operators in the Avis System. On December 16, 2005, Avis Rent A Car and Faith entered into an independent operator agreement (the "Agreement"). (See Compl., Ex. A.) The Agreement provides that Faith will exclusively rent Avis' rental cars. Further, Faith is required to maintain a staff, keep regular business hours, and service, repair, and store Avis rental vehicles. (Id. at 4-5.) In return, the Agreement provides:

> [Avis Rent A Car] shall furnish [Faith] with the vehicles to be rented on [Avis Rent A Car's] behalf or on behalf of another Avis System member, which [Avis Rent A Car], in its sole discretion deems to be sufficient in quantity and class, from [Faith's] location.

(Id., at 2.) Faith is entitled to 12% "of the net Total Revenue derived from each rental, computed by deducting any discounts and commissions to the renter and third parties." (Id. at 14.)

On September 19, 2011, Faith filed this lawsuit against Avis Group, Avis Rental, and Avis Rent A Car [Doc. 1]. The Complaint includes claims for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, see 18 U.S.C. § 1962, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. On October 25, 2011, the Defendants filed a Motion to Dismiss [Doc. 10]. On November 15, 2011, Faith filed an Amended Complaint [Doc. 18]. Specifically, Faith alleges that Avis falsely stated on the Wizard System that Faith was "sold out" of vehicles on the Wizard System. This misrepresentation allegedly cost Faith commissions that it would have otherwise earned. Finally, Faith asserts that Avis was unjustly enriched by customer coupons that Faith accepted. On December 9, 2011, the Defendants filed a Motion to Dismiss the Amended Complaint [Doc. 24]. The Defendants argue that Faith has not sufficiently pled an intent to defraud, proximate causation, or enterprise as required by the federal RICO statute.

II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is

extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

### III. Discussion

#### A. RICO

The Defendants have moved to dismiss Faith's RICO claim. Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity includes acts of wire and mail fraud. 18 U.S.C. § 1961(1).

1. <u>Alternative Explanation</u>

First, the Defendants contend that Faith's RICO claim is not plausible because there is an "obvious alternative explanation" for Avis' conduct. Specifically, the Defendants assert that Avis indicated, through the Wizard System, that Faith was "sold out" of cars to manage the Avis fleet and maximize revenue.

In <u>American Dental Association v. CIGNA Corp.</u>, 605 F.3d 1283 (2010), the plaintiffs alleged that the defendant insurers had committed RICO violations by conspiring to bundle and downcode certain insurance claims. The court, however, held that such conduct did not present a plausible RICO claim. The court reasoned that the alleged conduct "may just as easily have developed from independent action in a competitive environment as it would from an illegal conspiracy, because each insurer would have an economic interest in decreasing physicians' costs and increasing profits." <u>Id.</u> at 1295.

Here, the Defendants argue that, as in <u>American Dental</u>, Avis "chose to limit the types of rentals [available on the Wizard System] at various sites in anticipation of particular risks and opportunities." (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 7.) The Complaint, however, alleges that Avis acknowledged by email that they shut down independent operators on the Wizard System for reasons other than the vehicles being "sold out." (Compl. ¶ 30.) Indeed, the Complaint alleges that Avis

listed certain locations as "sold out" as an incentive for those locations to increase insurance sales and "upsells." (Id.) Similarly, the Complaint alleges that Avis Rent A Car employees admitted that Faith had appeared as "sold out" on the Wizard System when Faith actually had cars available for rent. (Id. ¶ 31.)

Unlike American Dental, these allegations support a *plausible* inference that the Defendants' conduct was unlawful. Indeed, the Complaint sets forth facts that directly contradict the Defendants' "obvious alternative explanation." Faith need not show that there are no legitimate explanations for the Defendants' representations. Rather, the Plaintiff need only establish that an improper explanation is plausible. Faith has done so. For this reason, the Defendants' "obvious alternative explanation" does not warrant dismissal of the Plaintiff's RICO claims.

### 2. Proximate Cause

Next, the Defendants argue that Faith has not pled sufficient facts to establish proximate cause. RICO plaintiffs must prove "some direct relation between the injury asserted and the injurious conduct alleged." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 464 (2006) (quoting Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992)). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Id. at 461; see also Holmes, 503 U.S. at 269 (noting that "the less

direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.").

In <u>Hemi Group, LLC v. City of New York</u>, 130 S. Ct. 983 (2010), New York City brought a RICO action against a New Mexico based cigarette company. The company had failed to collect sales taxes from customers residing in New York City. The plaintiff alleged that the company had violated the Jenkins Act, which requires out of state sellers to provide states with customer sales information. The court, however, found no direct relationship between the alleged violation (the failure to report customer information to New York state) and the plaintiff's harm (uncollected sales tax). The Court reasoned that the city's injury was caused by the defendant's failure to collect taxes from its customers,[1] *not* the defendant's failure to report customer information to New York state.

By contrast, in <u>Bridge v. Phoenix Bond & Indemnity Co.</u>, 553 U.S. 639 (2008), a bidder at a tax lien auction sued a competitor and the competitor's parent company for RICO violations. The plaintiff alleged that the defendants had retained related firms to place simultaneous bids. The defendants then allegedly violated the county's single bidder rule by representing to the county that the cooperating firms were not

---

[1] The plaintiff did not allege that the defendant had any duty to collect such taxes.

related to the defendants. The plaintiff asserted that it won fewer tax liens as a result of the defendants' misrepresentations. The defendants argued that because the plaintiff did not rely on the alleged misrepresentations, there was no direct causal relationship between the RICO violations and the plaintiff's damages. The Court held that the plaintiff need not prove reliance to establish causation. First, the Court reasoned that "[h]aving rejected [defendants'] argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim." Id. at 655. Further, the Court noted that "while it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it." Id. at 656.

Here, as in Bridge, the Plaintiff was directly injured by the Defendants' misrepresentations to third parties. See id. (notion that only those relying on misrepresentations may recover under RICO is "contradicted by the long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation."). Unlike in Hemi Group, Faith's

injury is not attenuated or unrelated to the Defendants' conduct. In Hemi Group, it was uncertain whether New York City would have recovered any sales tax revenue had the defendant provided sales tax information to New York state. Here, as in Bridge, lost rentals were a direct and foreseeable result of the Defendants' misrepresentations to potential customers. As in Bridge, the fact that the alleged misrepresentations were made to third parties does not bar Faith's claims. See id. (noting that misrepresentations to third parties causing harm to plaintiff can support RICO claim). Thus, the Plaintiff has pled sufficient facts to support proximate causation.

Nevertheless, the Defendants argue that it will be difficult to calculate the Plaintiff's damages. Indeed, the Plaintiff must show which customers *would have* booked rental cars from Faith had the Defendants not made the alleged misrepresentations. This calculation, however, must be made in every fraud claim. As discussed above, the Defendants' alleged conduct directly harmed the Plaintiff. The Defendants have not explained why such damages calculations will be prohibitively difficult in this case. In any event, the potential difficulty of calculating damages is not determinative of the proximate causation inquiry.

### 3. Particularity

Next, the Defendants argue that the Plaintiff has failed to plead its RICO claim with sufficient particularity. "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." <u>Ambrosia Coal & Const. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316 (11th Cir. 2007). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." <u>Id.</u> at 1316-17.

Here, the Complaint sets forth fourteen separate instances of alleged misrepresentation. (Compl. ¶¶ 34, 37-52.) The Complaint alleges that these statements were made on the Wizard System and lists the dates that the statements appeared. Further, the Plaintiff provides the content of the misrepresentations: that Faith was "sold out" of rental cars. (<u>Id.</u>) Customers viewing the Wizard System relied on the representations and thus did not rent cars from Faith. (<u>Id.</u> ¶¶ 3, 29, 32, 35, 36.) Finally, Faith alleges that customers who did not rent from Faith rented cars from Avis-owned locations, thereby saving Avis money it would have paid in commissions. (<u>Id.</u> ¶¶ 2, 28, 35, 36.) Although the Defendants argue that few

customers rented from Avis-owned locations after viewing the misrepresentations on the Wizard System, the allegations of the Complaint must be taken as true and viewed in the light most favorable to Faith. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Thus, the Complaint specifies when, where, and who made misrepresentations. The Complaint states how those misrepresentations caused customers to rely upon them. Finally, the Complaint alleges that Avis saved money it would have paid in commissions to Faith. For these reasons, the Complaint satisfies the heightened pleading requirements of Rule 9.

### 4. Enterprise

The Defendants contend that the Complaint does not allege an "enterprise" under RICO. 18 U.S.C. § 1962(c) limits RICO liability to "person[s] employed by or associated with any enterprise." 18 U.S.C. § 1962(c). An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The "person" subject to liability must be distinct from the "enterprise" whose affairs are conducted through a pattern of racketeering activity. United States v.

Goldin Indus., Inc., 219 F.3d 1268, 1271 (11th Cir. 2000).

In Fitzgerald v. Chrysler Corp., 116 F.3d 225 (7th Cir. 1997), plaintiffs brought a class action lawsuit against an automobile manufacture alleging RICO violations. The plaintiffs claimed that the defendant manufacturer combined with its dealers and agents to form a RICO enterprise. The court, however, held that the combination of the defendant and its agents was not an enterprise. The court reasoned that "where a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally

integrated enterprise, the manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute." Id. at 228. The court noted that the dealers were merely a conduit for the manufacturer's alleged fraud and "did not, by their incidental role in the alleged fraud . . . lend an air of legitimacy to a person or entity that unless masked by a legitimate-seeming enterprise would be quickly discovered to be engaged in criminal acts." Id. at 227-228; see also Robins v. Global Fitness Holdings, LLC, 2012 WL 163031, at *18 (N.D. Ohio Jan. 18, 2012) (finding that defendant's combination with "unwitting accomplices" did not create RICO enterprise).

By contrast, in Williams v. Mohawk Indus., Inc., 465 F.3d 1277 (11th Cir. 2006) the plaintiffs alleged that their employer joined with several temp and recruiting agencies to hire illegal aliens. The court found that the association constituted an enterprise, noting that the recruiters "work closely with Mohawk to meet its employment need by offering a pool of illegal workers." Id. at 1284. The court reasoned that the defendant "and the third-party recruiters are distinct entities that . . . are engaged in a conspiracy to bring illegal workers into this country for Mohawk's benefit." Id.

Here, the Complaint alleges that the Avis System is a RICO enterprise. The Avis System is comprised of "1,300 Avis System locations operated by Avis Rent A

Car and its licensees (franchisees) and 'independent operators' throughout the United States." (Compl. ¶¶ 1 & 72.) As in Fitzgerald, but unlike in Williams, the Complaint alleges that the independent operators and franchisees were merely unwitting accomplices. Indeed, Faith, as an independent operator, claims that it was an unwitting *victim*. The network of independent operators and franchisees "did not, by their incidental role in the alleged fraud . . . lend an air of legitimacy to a person or entity that unless masked by a legitimate-seeming enterprise would be quickly discovered to be engaged in criminal acts." Id. at 227-228. Indeed, unlike in Williams, the independent operators and franchisees were not conspirators in Avis' alleged fraud, but were victims of that fraud. Thus, the Complaint does not sufficiently allege that the Defendants combined with an "enterprise" under 18 U.S.C. § 1962(c). For this reason, the Plaintiff's RICO claims are dismissed.

    B.    <u>Breach of Fiduciary Duty</u>

The Defendants argue that the Plaintiff's breach of fiduciary duty claim should be dismissed because they do not owe Faith a fiduciary duty. "[I]n the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." Newitt v. First Union Nat'l Bank, 270 Ga. App. 538, 545 (2004) (quoting Kienel v. Lanier, 190 Ga. App. 201, 203 (1989)). "The party asserting the existence of a confidential relationship has the

burden of establishing its existence." Canales v. Wilson Southland Ins. Agency, 261 Ga. App. 529, 531 (2003). "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1.

Here, the Plaintiff claims that the Agreement creates a principal-agent relationship between Faith and Avis. The Agreement states that Faith will rent vehicles "on [Avis Rent A Car's] behalf or on behalf of another Avis System Member." (Compl., Ex. A, at 2.) Faith therefore has explicit authority to contract with customers on Avis' behalf. See Lane Co. v. Taylor, 174 Ga. App. 356, 362 (1985) ("Essentially an agent has authority to establish contractual relations with third parties and his principal."). Indeed, the Agreement contemplates that Faith will act on Avis Rent A Car's behalf by limiting Faith's authority "to act for or on behalf of [Avis Rent A Car] . . . *except as expressly provided herein.*" (Compl., Ex. A, at 1)

(emphasis added). As discussed above, the Agreement provides that Faith will act as an agent for Avis Rent A Car in certain circumstances.

Nevertheless, the Defendants contend that Faith is not an agent because it is designated as an independent contractor under the Agreement. (See id.) However, "[s]erving concurrently as an agent and as an independent contractor is not mutually exclusive." Williams v. Department of Corrections, 224 Ga. App. 571, 576 (1997). "In fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services." RESTATEMENT (SECOND) OF AGENCY § 14n (1958). Thus, a fiduciary relationship exists between Faith and Avis Rent A Car. For this reason, the Plaintiff's breach of fiduciary duty claim should not be dismissed.

### C.  Breach of Duty of Good Faith and Fair Dealing

The Defendants have moved to dismiss the Plaintiff's claim for breach of the duty of good faith and fair dealing. Under Georgia law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Brack v. Brownlee, 246 Ga. 818, 820 (1980) (quoting RESTATEMENT

(SECOND) OF CONTRACTS § 231 (1981)). "If an agreement by its express terms grants a party absolute or uncontrolled discretion in making a decision, then no duty of good faith is implied as to that decision." Hunting Aircraft, Inc. v. Peachtree City Airport Auth., 281 Ga. App. 450, 453 (2006). In Charles v. Leavitt, 264 Ga. 160 (1994), the defendant argued that a divorce settlement agreement gave him absolute discretion, negating the duty of good faith. The agreement provided that the defendant would be the "sole judge" of his financial condition. The court held that the defendant's "evaluation of his financial condition was left to his unfettered control and discretion and need not have been exercised in good faith." Id.

Here, Faith alleges that the Defendants breached the implied duty of good faith and fair dealing by failing to provide sufficient rental cars. The Agreement provides that Avis Rent A Car "shall furnish [Faith] with the vehicles . . . which [Avis Rent A Car], in its *sole* discretion deems to be sufficient in quantity and class." (Compl., Ex. A., at 2) (emphasis added). As in Charles, the Agreement explicitly provides that Avis Rent A Car will have "sole discretion." See Charles, 264 Ga. at 160 (provision making defendant "sole judge" did not imply duty of good faith).[2] Thus, the

---

[2]The Plaintiff relies on Capital Health Mgmt. Grp., Inc. v. Hartley, 301 Ga. App. 812 (2009). The Agreement in that case provided that disability determination would be made at the "sole discretion" of the defendant. Unlike in Charles, however, the plaintiff in Hartley did not argue that this provision gave it absolute discretion. Further, the Georgia Court of Appeals in Hartley did not, and cannot, overrule the

Agreement does not imply a duty of good faith and fair dealing. For this reason, the Plaintiff's breach of the implied duty of good faith and fair dealing claim is dismissed.

D. <u>Unjust Enrichment</u>

Finally, the Defendants have moved to dismiss the Plaintiff's unjust enrichment claim. "Recovery on a theory of unjust enrichment . . . is only available 'when as a matter of fact there is no legal contract.'" <u>Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.</u>, 139 F.3d 1396, 1413 (11th Cir. 1998) (quoting <u>Regional Pacesetters, Inc. v. Halpern Enters., Inc.</u>, 165 Ga. App. 777, 782 (1983)). However, "[e]ven if there is an express contract, if services not contemplated by the original agreement become necessary to achieve the contractual objective and are rendered and accepted, the law implies and enforces performance of a promise to pay for such extra services." <u>Maher v. Associated Video, Inc.</u>, 167 Ga. App. 763 (1983) (quoting <u>Puritan Mills v. Pickering etc. Co.</u>, 152 Ga. App. 309, 310 (1979)).

Here, Faith claims that Avis was unjustly enriched by requiring Faith to accept coupons for free rentals. Faith was paid no commission on such rentals. As discussed above, the Agreement governs the relationship between Faith and Avis. Faith argues, however, that the coupons were not contemplated by the Agreement. To the contrary, Schedule A to the Agreement provides that Faith will be paid "(12%) of the net Total

Georgia Supreme Court's decision in <u>Charles</u>.

Revenue derived from each rental, computed by *deducting any discounts* and commissions to the renter and third parties . . . from Total Revenue." (Compl., Ex. A., at 14) (emphasis added). Thus, the Agreement expressly contemplates that discounts to customers will affect the commissions owed to Faith. For this reason, the Plaintiff's claim for unjust enrichment is dismissed.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss the Amended Complaint [Doc. 24]. The Court DENIES as moot the Defendants' Motion to Dismiss [Doc. 10].

SO ORDERED, this 19 day of April, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge